UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMADA WORLDWIDE INC.,<br><br>                Plaintiff,<br><br>v.<br><br>NORTH AMERICAN HOSPITALITY,<br>INC. and ANUP BHALLA,<br><br>                Defendants. | Civ. No. 15-8441 (KM) (JBC)<br><br>OPINION |

**MCNULTY, U.S.D.J.:**

This matter comes before the Court on the unopposed motion of Plaintiff Ramada Worldwide Inc. ("Ramada") for default judgment against Defendants North American Hospitality Inc. ("NAHI") and Anup Bhalla ("Bhalla"). For the reasons set forth below, I will enter default judgment against North American Hospitality and Bhalla. Ramada is awarded $218,521.49, comprising (i) $28,473.96 in outstanding fees and interest and (ii) $190,047.53 in actual damages and interest. Post-judgment interest will accrue from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

**BACKGROUND**

Ramada is a Delaware corporation with its principal place of business in New Jersey. (Complaint, Dkt. No. 1 ("Compl.") ¶ 1) NAHI is a corporation organized under the laws of and maintaining its principal place of business in Indiana. (*Id.* ¶ 2) Bhalla is a principal of NAHI and is a citizen of Indiana. (*Id.* ¶ 3)

This suit arises from a license agreement entered into between Ramada and NAHI on August 31, 2004 ("License Agreement") pursuant to which NAHI

1

was to operate a 83-room hotel under the Ramada name in Indianapolis, Indiana, for a period of twenty-five years. (Compl. ¶¶ 8–9) Bhalla, NAHI's sole member, signed the License Agreement on behalf of NAHI. (Certification of Suzanne Fenimore in Support of Motion for Final Judgment by Default, dated March 8, 2016, Dkt. No. 9-3 ("Fenimore Cert.") Ex. A ("License Agreement") p. 24) On the same day, NAHI and Ramada entered into an Addendum to the License Agreement (the "Addendum"). (Fenimore Cert. Ex. C) Bhalla also executed a guaranty of NAHI's obligations under the License Agreement ("Guaranty"). (Compl. ¶ 21; Fenimore Cert. Ex. D) The Guaranty committed Bhalla to make any unpaid payments on behalf of NAHI in the event that NAHI defaulted under the License Agreement. (Compl. ¶ 22)

Under the terms of the License Agreement, NAHI was obligated to make renovations to the hotel facility to bring it into compliance with certain standards set forth in the License Agreement and to ensure certain scores on periodic quality assurance inspections. (Compl. ¶¶ 10–11; License Agreement §§ 3.4, 3.9) NAHI was also obligated make periodic payments to Ramada for royalties, taxes, and a variety of fees, which are collectively defined by the License Agreement as "Recurring Fees." (Compl. ¶ 13; License Agreement § 7) In order to calculate the royalties owed, NAHI undertook to prepare and submit to Ramada monthly gross room revenue reports. (Compl. ¶ 15; License Agreement § 3.8) Additionally, NAHI undertook to maintain accurate books and records and to allow Ramada to audit those documents. (Compl. ¶ 16) The License Agreement provided that Ramada could terminate the agreement if NAHI failed to pay Ramada any amount due under the agreement, or if NAHI failed to remedy a default of its obligations or warranties within 30 days of receipt of written notice of such default. (*Id.* ¶ 17; License Agreement § 11.2) In the event that the License Agreement was terminated, NAHI agreed to pay Ramada all damages, losses and other expenses that would be payable during the remainder of the unexpired term of the agreement. (Compl. ¶ 19; License Agreement § 12; Addendum § 4)

On December 10, 2014, Ramada conducted a quality assurance inspection of the property. (Compl. ¶ 25) NAHI received a failing score in the inspection and was notified of this fact by letter dated January 7, 2015. (*Id.*; Ex. E) That letter also noted that this failure resulted in a default of the License Agreement and Ramada gave NAHI 90 days to cure the default. (*Id.*) A second inspection occurred on July 15, 2015. (Compl. ¶ 26) The Facility again received a failing score. Ramada alerted NAHI that it was in default of the License Agreement and had thirty days in which to cure. (*Id.*; Ex. F) NAHI did not cure the default and on September 29, 2015, Ramada informed NAHI that it was terminating the License Agreement effective as of that date, and that NAHI owed actual damages for premature termination and all outstanding Recurring Fees. (*Id.* ¶ 27)

On December 4, 2015, Ramada filed its complaint in this action. (Dkt. No. 1) The complaint asserts causes of action sounding in breach of contract and unjust enrichment for NAHI and Bhalla's failure to remit payment on the Recurring Fees. Although served, neither NAHI nor Bhalla answered the complaint. On February 25, 2016, the clerk entered default against NAHI and Bhalla. On March 10, 2016, Ramada filed this motion for a default judgment against NAHI and Bhalla. (Dkt. No. 9) Ramada seeks (i) $28,473.96 in unpaid recurring fees and interest and (ii) $480,387.16 in actual damages, plus interest. (Fenimore Cert. ¶¶ 23, 24)

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**LEGAL STANDARD AND DISCUSSION**

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on

the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

## I.    Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Service of an individual, such as Bhalla, may be made by personal service, leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with a person of suitable age and discretion, delivering a copy of the summons and complaint with an agent for service of process, or by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where

service is made. Fed. R. Civ. P. 4(e).

Service of a corporate entity, such as NAHI, may be made by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" or by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made. Fed. R. Civ. P. 4(h)(1).

New Jersey law states in relevant part that service on a corporation may be made

> by serving a copy of the summons and complaint . . . on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties.

N.J. Ct. R. 4:4-4(a)(6).[1]

Here, the prerequisites for default judgment have been met. The complaint was filed on December 4, 2015. (Dkt. No. 1) Bhalla and NAHI were personally served on December 17, 2015. (Dkt. No. 5; Certification of Bryan P.

---

[1]    If, despite diligent efforts, personal service cannot be made in accordance with N.J. Ct. R. 4:4-4(a)(1), *in personam* jurisdiction may nevertheless be obtained over any defendant by substituted or constructive service, in accordance with N.J. Ct. R. 4:4-4(b)(1)(C), by

> mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode; (2) a minor under the age of 14 or a mentally incapacitated person, addressed to the person or persons on whom service is authorized by paragraphs (a)(2) and (a)(3) of this rule; (3) a corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its principal place of business, or to its registered office.

N.J. Ct. R. 4:4-4(b)(3).

Couch In Support of Motion for Final Judgment by Default, dated March 8, 2016, Dkt. No. 9-2 ("Couch Cert.") ¶ 5) NAHI and Bhalla had twenty-one days (until January 7, 2016) to file an answer or otherwise respond to the complaint pursuant to Fed. R. Civ. P. 12(a). That time was extended to February 6, 2016 by consent order. (Dkt. No. 7) On February 25, 2016, the clerk entered default against NAHI and Bhalla. (Docket Entry following Dkt. No. 8) Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist,* 756 F.2d at 18–19.

### II.   Three Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds,* 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 74 (3d Cir. 1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

### a. Factor 1

My independent review of the record does not suggest that the claims asserted by Ramada against the defendants are legally flawed or that either NAHI or Bhalla could mount a meritorious defense. *See Doe,* 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir. 1990), I find that Ramada has successfully stated claims for relief as against NAHI and Bhalla.

The complaint asserts five causes of action, which, in essence, amount to a claim for breach of contract against NAHI for failing to remit payment on the Recurring Fees and actual damages and breach of the Guaranty against Bhalla, in his capacity as guarantor, for failing to pay the Recurring Fees and actual damages on behalf of NAHI. Under New Jersey law, a prima facie case for breach of contract requires that the plaintiff show: (1) a contract between the parties; (2) a breach of that contract; and (3) damages resulting from the

breach. *See Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985); *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

The facts alleged in the Complaint establish that those elements are satisfied here. The declaration submitted in support of Ramada's motion and the exhibits annexed thereto corroborate those factual allegations. Both the License Agreement and Guaranty are valid and enforceable contracts. Those contracts were breached by NAHI's failure to pay certain of the Recurring Fees and actual damages owed to Ramada and Bhalla's failure to personally pay the same. Ramada has accrued damages as a result of these breaches. In sum, the facts alleged by Ramada state a claim for breach of the License Agreement against NAHI and breach of the Guaranty against Bhalla. I cannot discern a meritorious defense to these claims from the record before me.

### b. Factors 2 and 3

The second and third factors weigh in favor of default. NAHI and Bhalla were properly served on December 17, 2015 but have failed to appear and defend themselves in any manner. It is clear that Ramada has been prejudiced by this dereliction because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiffs] will suffer prejudice if the Court does not enter default judgment as Plaintiff[s] [have] no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in [the] default." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In this case, "there is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is no evidence that the

defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted). Indeed, the defendants' time to answer was extended once, on consent (ECF no. 7), but defendants then failed to file any answer.

Overall, then, the three factors support the entry of default judgment against NAHI and Bhalla, and I will grant the motion for default judgment against the defendants.

### III.   Remedies

Ramada seeks two types of compensation, totaling $546,291.32. (*See* Fenimore Cert. ¶ 27) Specifically, Ramada seeks (1) $28,473.96 in recurring fees, including principal and interest, and (2) $517,817.36 in actual damages and prejudment interest. (*See id.* ¶¶ 23–24; Ex. I)

Ramada has submitted documentary evidence in support of its demands, while NAHI and Bhalla have submitted nothing and have failed to appear or respond in any manner. An *ex parte* hearing would serve little additional purpose, so I rule based on the record before me.

I will grant Ramada's request for the principal amount of recurring fees due and interest on those fees. (*See* Fenimore Cert. ¶ 23) Ramada has documented recurring fees (and the interest thereon calculated at 1.5% monthly) owed from April 2015 through January 2016 in the amount of $28,473.96. (Fenimore Cert. Ex. H)

I will also grant Ramada's request for ongoing actual damages, calculated under a liquidated damages provision in the parties' agreement, but not to the full extent requested.

Actual damages, provided for under the terms of the License Agreement and Addendum pursuant to a specified formula, are meant to replace the income that RWI would have received if not for the premature termination of the License Agreement. (Fenimore Cert. Ex. C Addendum ¶ 4) The relevant provision obligates NAHI to pay "all damages, losses, costs and expenses (including reasonable attorney's fees) incurred by us and/or amounts which

would otherwise be payable for and during the remainder of the unexpired
Term of the License Agreement but for such termination." The "remainder of
the unexpired Term" is 5,084 days, or approximately 14 years of the 25-year
agreement.

Ramada has documented damages in the amount of $480,387.16, based
on the average daily Recurring Fees owed by NAHI in the year before the
termination (calculated to be $94.49 per day, as 8.5% of the average gross
room revenue per day of $1,111.65) multiplied by 5,084, the number of days
remaining in the term of the License Agreement. (*See* Fenimore Cert. ¶ 25)

I find that this measure of damages—which essentially permits Ramada
to do nothing and collect its fees as if the defendant had continued to operate
the motel for another 14 years—is excessive. To be sure, Ramada's position is
to some extent valid, but there must be some reasonable outside limit.

The validity of a liquidated damages clause depends upon whether it
reasonably forecasts the harm resulting from the breach. Where the harm (as
here) is future harm, the parties may settle on a dollar amount or formula that
approximates the likely loss. *See Wasserman's Inc. v. Middletown,* 645 A.2d
100, 106 (N.J. 1994); *Monsen Eng'g Co. v. Tami-Githens, Inc.,* 530 A.2d 313,
318 (N.J. Super. Ct. App. Div. 1987). The amount, however, must be
reasonable:

> Damages for breach of either party may be liquidated in the
> agreement but only at an amount that is reasonable in the light of
> the anticipated or actual loss caused by the breach and the
> difficulties of proof. A term fixing unreasonably large liquidated
> damages is unenforceable on grounds of public policy as a penalty.

*Restatement (Second) of Contracts* § 356(1) (1981) (quoted in *Wasserman,* 645
A.2d at 108.)

The Court may examine the reasonableness of a liquidated damages
clause "either at the time of contract formation or at the time of the breach."
*Naporano Assocs., L.P. v. B & P Builders,* 706 A.2d 1123, 1128 (N.J. Super. Ct.
App. Div. 1998) (quoting *Wasserman's Inc.,* 645 A.2d at 107). Whether an
unambiguous liquidated damages clause is valid and enforceable is a question

of law for the court. *Naporano,* 706 A.2d at 1127 (citing *Wasserman's,* 645 A.2d at 110). *See also Travelodge Hotels, Inc. v. Elkins Motel Associates, Inc.,* No. CIV. 03-799 (WHW), 2005 WL 2656676, at *10 (D.N.J. Oct. 18, 2005).

I consider the reasonableness of this liquidated damages provision "at the time of the breach," *see Naporano, supra,* when the agreement had another fourteen years to run. The unreasonableness, as applied here, is that the formula makes no provision for mitigation or substitute arrangements by Ramada. Ramada has failed to establish or even acknowledge that it could mitigate the damages that will allegedly accrue over the next fourteen years. Assuming—as the damages formula does—that Indianapolis remains a profitable market, Ramada presumably can find someone else to run a Ramada Inn there. *Cf. Sommer v. Kridel,* 378 A.2d 767, 768 (N.J. 1977) (where tenant abandons apartment, landlord cannot simply sue for the rent payable for balance of lease term, but must make reasonable efforts to re-let the apartment).[2]

Under the circumstances, it is unreasonable to enforce a liquidated damages provision that lets Ramada put its feet up and collect fourteen years' worth of fees for a defunct Ramada Inn. The Court could simply decline to enforce the provision, but that, too, would be inequitable. I estimate that five years would be more than enough time for Ramada to find a substitute operator/licensee, and will permit damages to that extent. I will award $172,444.25 in liquidated damages, representing $94.49 (the daily Recurring Fees NAHI would have owed based on its average gross room revenue) multiplied by 1825 days (or 5 years). Interest on this amount, calculated at a rate of 1.5% monthly from October 29, 2015 (30 days after the date of termination of the License Agreement) through the date of this Opinion, results in a total interest amount of $17,603.28.

---

[2]     I recognize that Ramada might argue a "lost volume" theory of damages, but such a theory has limits. On the one hand, Ramada has not been driven from the hotel business; on the other, the Indianapolis market does not offer unlimited opportunities for expansion. The law permits some reasonable curb. Because Ramada has suggested none, I have made a generous estimate.

The total judgment awarded is, therefore, $218,521.49. Post-judgment interest will accrue from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

**CONCLUSION**

For the foregoing reasons, the motion is granted as to defendants NAHI and Bhalla, and a default judgment will be entered in favor of plaintiff Ramada against defendants NAHI and Bhalla in the total amount of $218,521.49, with post-judgment interest from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

An appropriate order and judgment will issue.

KEVIN MCNULTY, U.S.D.J.

Date:  May 23, 2016

11